And our third and final case for the day is Yellow Pages Photos, Inc. v. YP, LLC, et al. Mr. Fee and Mr. Leon. Mr. Fee, are you ready to proceed? I am, Your Honor. Thank you. Richard Fee on behalf of the appellant, Yellow Pages Photo, Inc., which for ease of reference today, I will reference as YPPI. We also have a YP as one of the appellees and print media as the other appellee. Your Honor, this case involves two orders granting summary judgment. We'd ask that both of those orders be reversed and that the entire case be remanded for trial. Both of those copyrighted images that are owned by YPPI are covered by licenses between YPPI and not either appellant or either appellee, but rather with third parties. So the question is whether... Let me suggest to you, Mr. Fee, I think it'd be easier for me if you'd call it plaintiff. We've got so many Y's and P's here. Every time you do it, my brain goes to a chart. Why don't you just call your client the plaintiff? I will be happy to do so. Thank you, Judge Barnes. So the question is whether or not the plaintiff's images were used in violation of its copyrights by the defendants. And the defendants argued, and the district court found on appeal, that their use of those images, 330 different images, were actually covered by licenses, not between plaintiff and defendants, but between plaintiffs and other parties. And that was error. It was error because in the first instance, the district court found the conditions of the license were actually not conditions at all, but were rather covenants, such that a violation of those provisions in the licenses did not constitute copyright infringement, but rather were merely breach of contract. That was the first type of error. The second type of error were to disregard genuine issues of material fact. And there are voluminous genuine issues of material fact, any one of which should have precluded entry of summary judgment. Are these voluminous issues of material fact that you refer to related to whether these licenses essentially transferred to the successor entities that I have on a very complicated flow chart that one of my law clerks has helped me with? Yes, Your Honor. And let me address them one by one to make it clear. There's the AT&T services license. And there were numerous genuine issues of material fact that should have precluded the district court from concluding, erroneously, that the AT&T services license was actually not between plaintiff and AT&T services, which is what the license says, but was rather with a different AT&T entity by name of AT&T advertising. And with regard to that particular one, Your Honor, the court disregarded the fact that the document itself, the AT&T services license, says, quote, by in between Yellow Pages Photos, Inc. and AT&T services, Inc. The first amendment to that AT&T license also says, by in between YPPI or plaintiff and AT&T services, Inc. And in nowhere in the amendment even references AT&T advertising. The second amendment similarly states it's between Yellow Pages Photos, Inc. and AT&T services, Inc. I found some extrinsic evidence, though, where it was pretty clear to you all that actually that the second entity was actually referenced as paying the invoices and that you knew they were involved in this whole thing. No? Well, Your Honor, yes, there was extrinsic evidence, but that goes to another error by the court, which was to err in finding that the contract was ambiguous as to whom it was between. You shouldn't even get to extrinsic evidence because the document on itself, on its face, which was drafted by AT&T, that's the undisputed evidence, is that the license itself was drafted by AT&T, which defined which entity was a party to it. So it's not ambiguous. No extrinsic evidence should have been considered. That was an error. That's not your strongest position. I had district court erred in considering this more a covenant as opposed to copyright infringement. I thought that would be where you'd be starting with us today. Well, I was trying to address the court's question on that, but the covenant versus condition is a clear error in a both of the licenses is conditional language. It is provided that language. And in federal copyright law, and this is clear, that in we cited voluminous cases, if a licensee acts outside the permitted scope of a license, it may be held liable for copyright infringement. That is exactly what happened. Even if one assumes that the defendants were entitled to claim rights under the licenses, which this court should not find, but even if the court did find that the defendants could claim rights under the licenses with third parties, they clearly, or there's certainly genuine issues of material fact as to whether or not they violated these conditions of the license that were clearly conditions and not covenants because they were limiting the rights to use the license. With regard to the AT&T license, the condition of the license was that those, the use of the license had to be AT&T business locations. Now, critically, it never said at the business location of AT&T or any of its successors in interest. It doesn't say that. It doesn't say any affiliates or associated parties. It says AT&T business locations. The undisputed evidence is that it was not used in AT&T businesses locations. The second was the use of a copyright notice. AT&T drafted the agreement. They put in a very specific. Let me ask you a follow-up before you move on to your first point. So are you saying that there was, these contracts were drafted such that there is no way for any successor to possibly inherit the rights because it had to be used at the place of business of the originally named party? That would be, to me, a surprisingly aggressive interpretation of the contracts. Yeah, there is, and let me answer that two ways. There is certainly a way that it could have been assigned. There could have been an assignment of the rights. That was not done. There is no document, no evidence at all that these licenses, either one of them, was ever assigned. But wouldn't even under your interpretation, though, wouldn't even an assignment fail because a condition of the contract was that the images be used at the original entity's place of business? That's what the agreement says. What typically happens in these types of cases is there's an amendment that authorizes specifically the use at the assignee's place of business, and that could have been done. It wasn't done. In fact, there was a proposed third amendment that would have permitted the use of outsourcers and that would have removed the copyright notice requirement and the undisputed evidence is that that proposed amendment was rejected by the plaintiff and that thereafter AT&T told the plaintiff they were removing the images that they were segregating or quarantining them so they would not be used, which brings me to a bigger point, which is at no point in time before the institution of this case did the defendants ever act as if they had rights under either license. In fact, the evidence is clear that they didn't act that way. They didn't try to comply with the terms of either one of the licenses. The Berry license, the second license, was limited to a 45-seat license. The evidence is that AT&T needed far more than 45 seats. In fact, they expanded a 500-seat license to be unlimited after the Berry license was supposedly within the ambit of AT&T. So they didn't even act as they had rights under the license until they were sued. It's, you know, a classic post-hack rationalization for their conduct. And the use of the Asian outsourcers, that pertained to which part of this? That pertained to the 48-seat license? Thank you, Judge Carson. That pertains to actually both licenses and I see that my time's about up. Both of your contentions that they breached the condition. Both of those conditions were breached by use of Asian outsourcers. Is that correct? That is correct, Your Honor. If the presiding judge will indulge me, I have a question. I actually thought that your better argument, frankly, speaking only for myself, is that the second summer judgment order, those new images with the alterations were not fairly considered reprints. Is there anything you'd like to tell us about that aside from what's in your briefing? Yes, Your Honor. Thank you very much for asking about that. My time flew by as we have so many issues wrapped up in this appeal. The district court said it was using Black's Law Dictionary of the terms renewal and republication. Neither one of those definitions permits any change at all that she used. What if the company had a new phone number? Could they have changed that? That's a change and that's a fact question. Quite frankly, that's the issue. It's not for the district court to determine nor, quite frankly, for this panel to resolve. That's a classic fact question to be presented to a jury and they can argue as undoubtedly they will that that's not a material change and somehow it's only material changes that should make a difference. Thank you, Your Honor. Thank you. Mr. Leon. Thank you, Your Honors. I want to start first with the question that was raised by Judge Grant, whether there was a dispute over whether the licenses passed on to the transferees, that is, YP and Print Media here, and that has never been an issue and dispute in this case. YPPI has never once challenged the corporate history nor has it ever challenged the proposition that if AT&T Advertising was in fact a party to that AT&T as the district court found that it was, then my clients, Print Media and YP, would in fact enjoy the rights to use YPPI's images under that license. The only evidence on the corporate history comes from the declaration of William Klenny that we submitted. It's the Appellant's Appendix Volume 1, Document 121 that shows the corporate history that we have summarized in that flow chart that I hope was helpful and not confusing, and that's never been an issue and dispute, and there's no evidence challenging that corporate history, so I wanted to put that aside. Then there was quickly on the issue of who is the party to the license and whether my clients enjoy rights under the license. The court is focused on that AT&T license. If you look at the signature block, it specifically says that AT&T Services, which indisputably was simply a contract procurement entity for AT&T, that is 100% undisputed in the record, signed that agreement on behalf of AT&T Advertising. We would submit under Texas law, which governs that AT&T license, that it shows that AT&T Advertising is a party to the license just based on that on behalf of language. That's the converse ranch case that we cite in our papers. Now the district court gave YPPI the benefit of the doubt here and said, I think it's ambiguous as to who are the intended parties here, and looked at the extrinsic evidence. Once you do that respectfully, there's really only one conclusion that you can possibly reach, and that is that AT&T Advertising is a party to the license. On the one hand, you have AT&T testifying through Mr. Klenny's declaration that AT&T was always the intended party to that license. They paid for the images. They received the images. They used the images. AT&T Advertising was the entity publishing those yellow pages directories. On the other hand, you have YPPI, which drafted and submitted four different contract proposals before the license was entered into. Every one of them was addressed solely and exclusively to AT&T Advertising. Not a single one of those proposals made any reference to AT&T Services. YPPI's own principal, Mr. Moore, testified that he knew AT&T Advertising would be the party using YPPI's images under the license. That's Appellants Appendix Volume 2, Document 157-5. That's all the extrinsic evidence that there is in this case. That's what the district court had. Based on that, the only conclusion that the court could draw is that AT&T was an intended party to the license. That means that my clients, YP and Print Media, also enjoy the right to use the images under that license. Now, Judge Carnes, I want to turn to your issue because you thought the more interesting issue here was whether it's a condition versus covenant. We have two licenses here. We have the AT&T license and the Berry license. If we find that the provisions that we supposedly breached are covenants and not conditions, like the district court found, YPPI's only recourse is a claim for breach of contract. Now, before I get to the specific provisions at issue, I want to just touch upon this choice of law argument that we heard from Appellant here. The plaintiff has said, well, the district court erred by applying state contract law instead of federal copyright law in deciding whether the license terms were conditions or covenants. This argument, frankly, has never made any sense. YPPI has never identified any conflict between federal copyright policy and state contract law. If there's no conflict, then courts are supposed to apply state contract law, just like the district court did here. Now, let me turn to the two licenses at issue. I want to start with the AT&T license. And as noted, it's governed by Texas law. Under Texas law, if there is any reasonable way to read a license as containing covenants rather than conditions, that's the reading that courts must adopt. Texas law is crystal clear on that. We cite the Texas Supreme Court's decision in Criswell v. European Crossroads. I just want to briefly read what they said there. When the intent of the parties is doubtful or when a condition would impose an absurd or impossible result, the agreement will be interpreted as creating a covenant rather than a condition. So in baseball parlance, tie goes to the covenant. That's Texas law. But you're brushing past, I think, what's of concern to me, which is your argument could sort of just totally eliminate copyright law effectively. And so we've got to get back to what is the principle under which federal copyright law could trump. And the definition I was reading through some of the briefings was, if you allege that the copying or distribution exceeded the scope of the defendant's license, and in other words, it's impinging on the exclusivity, then that's copyright law. And you can talk about Texas or where it's all you want. And so my question is, let's get to the nub of this thing. What they're arguing that you violated, you had more than 48 people involved in this. And they're also saying that you violated where they wanted it used at AT&T businesses. You violated that by throwing this to the wind, Asian outsourcers or whatever. That sounds to me like you have impinged on the exclusivity of their property. Tell me why I'm wrong about that. Because just calling a license provision a condition doesn't make it. I'm not calling any words. Tell me why what I just said was wrong, that you have impinged on the exclusivity of their rights of this by distributing it more widely than you were allowed to under the license. Okay, let's so to start the fundamental premise is and let me get the case here. When a copyright owner grants a non exclusive license to use copyrighted materials, that copyright owner waives the right to sue the licensee for copyright One of the cases they cite prominently 535 F third 1373. So in other words, once you grant that non exclusive, right, you have given up your right for copyright infringement, that is federal copyright policy. And it's embodied in every case, the only exception is if you can show that in that license grant, there was a condition to the license grant itself, that was violated. If you can show that, then you can bring a claim for copyright infringement. But you start with the premise. Once you grant that non exclusive license, and that's what happened here. You have given up your right to sue for copyright infringement. It says I'm giving you the right to get this property, this book, this whatever five people, five people can do it no more. And you put it on the internet, you put it on Facebook, you give it to 100 people, there's no copyright infringement, you're saying, because there was a lot. So again, that's going to be a license by license inquiry. If so, what it would all depend on how the scope of the license there was five people and you give it to 100 people. And if that was if the five people restriction was not a condition to the license grant, then you have a claim for breach of contract. If the five people told you five, how many times do I as the owner of the property have to tell you five people? I mean, it's not four, not six, five. Understood. And what my what I'm saying is, if that five person restriction is a covenant, a restriction on use, then what you have is a claim for breach of contract, you do not have a I think the question is whether that five person restriction is a covenant or a condition. We know what happens if it's a covenant. The question is, what in your view makes that a covenant versus a condition? It would all depend on the language of the agreement that issue. But she just gave you the language though. But in that hypothetical, the license grant itself was not conditioned on compliance with the five person restriction. So that would be a claim for breach of contract. What would you have to say to make it a condition? You would have to say very simply a condition to this license grant is that the images or the copyrighted materials are not used by more than five people. Very simple. You just put it in right in the contract. Wiped out copyright law, haven't you with this? Mother may I, you've got to have two or three right words. But other than that, you say that protection is gone. That protection is gone when you enter into that non-exclusive license. That's when you give up that protection. The only thing you deserve. Go ahead. So the protection would exist if it was an exclusive license. Correct. So if you, if I said you're the exclusive licensee for the state of Georgia and I had other exclusive licenses in South America and you expanded your seats and they were all over the world, you would have violated copyright law. That's an exclusive license situation. Yes. Very different than what we have here. Here we have a non-exclusive license. And I think if you look at the terms of the AT&T license, which is where the focus needs to be, it's crystal clear. We would say that the parties knew the difference between conditions and covenants. And again, this is document 51-1 in the appendix. And it says this agreement is issued subject to the terms and conditions attached here to which supplier agrees to and accepts by commencing performance under this agreement. So when the parties wanted to label something a condition, they knew how to do that. And then if you go to those terms and conditions, I'm here at page six of the license, it says supplier hereby grants. That was the condition hereby grants to AT&T, a non-exclusive royalty-free, fully paid up, irrevocable, perpetual license to use the software on the designated system or the designated site or anywhere in AT&T's enterprise. So as soon as this non-exclusive agreement was signed, the license grant occurred. The deal was done. If you accept YPPI's position, then where you have a license grant that says the supplier, that's YPPI, hereby grants a non-exclusive license, that language becomes basically meaningless. You can't make sense of that because the grant actually has not happened because it's contingent on compliance with all these specifications that they try to turn into covenants. Again, the license says it's irrevocable and it's perpetual. All that language becomes meaningless under their reading because it's not necessarily irrevocable. It's not necessarily perpetual. We can, in fact, according to them, lose our rights to use their images under this license. That's why you can't reconcile their reading of the AT&T license with the notion that every one of these specifications is somehow a condition, but that's what their position is. And if you look, you talked about a couple of the specifications at issue here. One of them says, and they talk about this as the AT&T business locations, but specifications, it says you can use the digital images in AT&T's business locations. And for AT&T's business purposes only, provided that, that's where the provided that language is, such use is in accordance with the specifications. So to accept their reading, each and every one of these specifications, you would have to read as a conditioned precedent to the license grant. So then it's not irrevocable. It's not perpetual. And the language that says hereby grants is rendered meaningless. And if you look at some of those specifications, some of them are not even within my client's control. They're within YPPI's control. They have to give us model releases. That's one of the specifications. So would they actually control, would they have control over whether or not the model releases were valid and they could take away our license? You are agreeing that you may have violated, well, we'll have to decide covenant conditions. You're agreeing you violate, you may have violated some of the covenants. That's an argument. And so I guess the difference here is they'd rather be in copyright territory because there's travel damages versus breach of contract. Is that what we're talking about practically? That's exactly, well, it's that plus, first of all, we do not concede that we violated anything, but that's a separate issue. It's not relevant for this appeal. But the reason that they want to be in copyright law is they know if these are covenants, their claim is for breach of contract, they can never show any damage. Think about the copyright notice provision. We were supposed to put in under the license. Let's get back to the notice provision. I, speaking for myself, I'm kind of with you on the covenant business on that one. I am concerned about limiting the number of people who could receive this and then suddenly sending it to Asian outsourcers where he lost control of exclusivities greatly diminished with that. I'm concerned about that. And so that, I don't think that's a matter of law. The judge did not say that didn't happen. You're still on the hook perhaps for what? Breach of contract. Correct. So let me address that because I think the AT&T license also speaks to that. The AT&T license says that AT&T may place the digital images on their internal intranet or other common server for access and use by licensed end users. Then if you look at the definition of end users, I'm at page three of the license, it says an end user is defined as an individual that utilizes the high resolution digital images for the specific purpose of creating a final image that will be used in a print or electronic product. And then it goes on in those terms and conditions. I'm at page six of the terms and conditions. It says, it starts at the very bottom of page six, goes on page seven. AT&T's rights of disclosure under this agreement shall include the right to provide the software or other information of supplier to AT&T's agents and contractors who have a need for it in connection with the performance of services for AT&T. So the license itself specifically speaks to the issue of contractors. If they felt that we have used contractors in violation of the provisions of this license, their recourse is you bring a claim breach of contract. Now they could never, ever show any damages on that because- All right, Mr. Leon, I'm going to just, I'm going to ask you one quick question, and I'd like for you to deal with this as quickly as you can on the republication issue. I have the sense that we're going to deal with that on rebuttal. So there are some changes, as you would acknowledge, there are some different phone numbers on the republication. There's different, the ads are different sizes. Can you just quickly address why that's not a concern? Sure. I think the district court got it spot on. A republication doesn't mean it has to be an exact replica. It means it can be published anew. Anew means that there can be edits to it. And here's the really, this is why this is such a gotcha. If you look at the changes to it, they're not changes to YPPI's images. YPPI doesn't own copyrights in the text of our client's ads. They own copyrights in the images used. And all that happened is those exact same images were used for the exact same ads for the exact same clients from directories originally published by YP and then republished in directories that were published by print media. The great example is they have one where a YPPI image was used in an advertisement for a law firm. It says, celebrating 19 years. That same image, same client published in a print media directory. This time it said celebrating 20 years. Based on that, they said we violated the license and should face a claim for tens of millions of dollars for copyright infringement. All right. Thank you, Mr. Leon. Thank you. Mr. Fee, you have five minutes left. Thank you, Judge Brant. I'd like start with the fact that Judge Karnes got her analysis exactly correct. The federal copyright law says that unequivocally, and Apolli has not argued otherwise, that use in excess of a license, exceeding the scope of a license, is copyright infringement. It doesn't matter whether it's an exclusive license or a non-exclusive license. If you use copyrighted works, in this case images, in a way that exceeds the scope of the license grant, which there is clear evidence that they did, that's copyright infringement. Judge Karnes' example of you can distribute the book to five people and it's given to six or a dozen or hundreds, it doesn't matter. That's copyright infringement, period. To hold otherwise eviscerates copyright infringement. There has been no law cited to the contrary. Apolli argued that, well, there's no conflict between Texas law and federal copyright law. That's incorrect. The conflict is if you use copyright material in excess of a license or exceeding the scope of a license, it doesn't matter whether you call it a condition or a covenant. It's copyright infringement, period, under copyright law, federal copyright law policy. We cited case after case after case on that issue. So that's the first issue. The second issue is the question of whether or not we're challenging the fact that these licenses pass through. Absolutely we are. Because if the AT&T services license is with AT&T services, which is what it says and what the first amendment and the second passed through, the only way, only way, Apollis have any rights under the AT&T services license is if it's found that the party to the license is not AT&T services, but AT&T advertising. That's the only way they have any rights. Did AT&T services ever use any of these images or was it always AT&T advertising that used the images? There's no evidence as to whether or not they used it, Judge. And I'd like to address the argument, well, it could be both parties. It can't be both parties because the companies split. AT&T services stayed under the AT&T umbrella. AT&T advertising went under what became the YP now Dex Media umbrella. The license has to go with one or the other. You don't get to double your license by finding it applies to both parties. There was never any analysis done. The AT&T license was not given to two different parties. It was a license to one party. When there was a split, if that's what they want to argue, they should have come back to YP and said, hi, we'd like it to travel here rather than travel there. Will you agree to that? They never did that. The reason they never did that is they perceived that they had any rights under these agreements. That's why they gave them to outsourcers after the evidence shows they said they segregated the images, they quarantined them and they weren't going to use them anymore. Why do you go through that trouble if you think you have continuing rights? I'd like to address the republication issue. No definition says you can make changes. That's a fact issue. The law is clear. Fact issues need to be resolved by a jury. That wasn't done. The district court exceeded its authority in resolving fact disputes. What part of the of the advertisement say for Gibson's barbecue in your view is the copyrighted image? Is it the entire advertisement or is it particular parts of that advertisement? Your Honor, the only part that is copyrighted by my client, the plaintiff, is the photograph showing the the food. And isn't that photograph the same in both of the ads? The photograph is the same but that's not what the AT&T license says. The AT&T license says the advertisement or I'm sorry the Berry license. It allows for reprints of the advertisement not the image and they knew that they were licensing images not advertisements. But you're saying something as simple as updating. We've been in business 19 years to 20 or changing a telephone number wouldn't fit within the permission, the leeway that's given for republication of these things. That is our argument, Your Honor. And that's because of the way people. Oh, excuse me. I said it seems pretty extreme to me. That seems like a very strict reading but that's the way the license was drafted. Not by my client. Every time some little barbecue joined or some lawyer, you know, changes his telephone number they've got to come back to you and get an amendment to the license. What they could have said was any change to the licensed image and that's not what they said. They said that they could correct that on this one little ad where you want to change the telephone number. Convene a group of lawyers and then we have another contract. Your Honor, this was not our primary argument. This is our fallback argument. We think that the primary argument that requires reversal is the first issue that you touched upon which is the fact that their interpretation of their breaches of these licenses does not constitute copyright infringement where under federal law clearly does. All right. Thank you both. We have your case under submission and we are in recess until tomorrow morning. Thank you. I appreciate your time today. Thank you so much.